**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| CAROL J. MEYER, on behalf of ) | |
|   AMBER L. MEYER-LACKAMP ) | |
|                               Plaintiff, ) | |
|                                            ) | CIVIL ACTION |
| v. ) | |
| ) | No. 14-2310-JWL |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
|                                Defendant. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act, but finding disability, and granting Supplemental Security Income (SSI) payments under sections 1602 and 1614(a)(3)(A) of the Social Security Act beginning May 11, 2011, but not before that date. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

**I.     Background**

The claimant, Amber Meyer-Lackamp (Ms. Meyer-Lackamp), applied for DIB and SSI, alleging disability beginning June 30, 2006. (R. 20, 211-25). Ms. Meyer-Lackamp

committed suicide before the final Administrative Law Judge (ALJ) hearing in this case, and her mother, Carol Meyer (hereinafter Plaintiff) was substituted as the claimant in this case.  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  Plaintiff presents two arguments in which she alleges the Administrative Law Judge (ALJ) erred in finding that the criteria of Listing 12.04 were not met or equaled before May 11, 2011, and also erred in failing to secure vocational expert (hereinafter VE) testimony.

      The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

      The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant engaged in substantial gainful activity since the alleged onset, whether she had a severe impairment(s), and whether the severity of her impairment(s) met or equaled the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant could perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in

the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove that the claimant had a disability that prevented performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed for the claimant. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff notes that the ALJ found Ms. Meyer-Lackamp's condition met Listing 12.04 beginning May 11, 2011but not before then, and she argues that "the same evidence . . . supports a finding that Ms. Meyer-Lackamp met the requirements of listing § 12.04 between June 30, 2006, and May 10, 2011." (Pl. Br. 20). Alternatively, she argues that even if the "B" criteria of the Listing were not met or equaled in the earlier period, the "C" criteria were. (Pl. Br. 22-24). Finally, Plaintiff claims the ALJ was required to have VE testimony in support of his finding that Ms. Meyer-Lackamp was able to perform other work in the economy before May 11, 2011, and that the absence of such testimony is error. (Pl. Br. 24-26). The court finds no error in the ALJ's determination, and addresses the alleged errors in the order presented in Plaintiff's Brief.

## II.     Listing 12.04

The ALJ determined that at all times relevant, Plaintiff has had the severe impairments of affective disorders, anxiety disorders, and alcohol and drug abuse disorders in partial remission. (R. 23). He determined that before May 11, 2011 these

impairments, individually or in combination, did not meet or medically equal the severity of any Listed impairment, and that before May 11, 2011 Plaintiff had no exertional limitations, but had nonexertional limitations resulting in an RFC only for "simple, repetitive work that does not require frequent interactions with other people." Id. 23-24. The ALJ determined that:

> Prior to May 11, 2011, the claimant's ability to perform work at all exertional levels was compromised by nonexertional limitations. However, these limitations had little or no effect on the occupational base of unskilled work at all exertional levels. A finding of 'not disabled' is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

(R. 27).

The ALJ then determined that beginning on May 11, 2011 Ms. Meyer-Lackamp's impairments met the criteria of Listing 12.04. (R. 27-29). He determined that the medical evidence, beginning when Ms. Meyer-Lackamp requested medical assistance from the Division of Family Services on May 11, 2011, demonstrated that Ms. Meyer-Lackamp had "marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, [and] marked difficulties in maintaining concentration, persistence or pace," thereby demonstrating that the "B" criteria of Listing 12.04 were met. (R. 28). The ALJ determined that Ms. Meyer-Lackamp was disabled within the meaning of the Act beginning on May 11, 2011, but not before then, denied her application for DIB benefits, and granted her application for SSI payments. (R. 29).

### A.      Standard for Evaluating Step Three

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling per se. 20 C.F.R. §§ 404.1525(a), 416.925(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If a claimant's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling. Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").  However, the claimant "has the burden at step three of demonstrating, through medical evidence, that her impairments 'meet all of the specified medical criteria' contained in a particular listing." Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)).  "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing. Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of h[er] age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)).  The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Yuckert, 482 U.S. at 153.  "Because the

Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

The Commissioner's Listing of Impairments includes a Listing of Mental Disorders which contains, among others, Listing 12.04 (Affective Disorders). 20 C.F.R., Pt. 404, Subpt. P, App. 1 §§ 12.00, 12.04. Listing 12.04 consists of a statement describing affective disorders, and the paragraph "A" criteria, paragraph "B" criteria, and paragraph "C" criteria for that listing. Id., § 12.00(A); see also, 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.04. The Agency will determine that a claimant meets Listing 12.04 if the criteria of both paragraph "A" and paragraph "B" are met, or if the criteria of both paragraph "A" and paragraph "C" are met. The parties agree with the ALJ that the criteria of paragraph "A" were met, both before and after May 11, 2011. (R. 28); (Pl. Br. 18-19); (Comm'r Br. 4-5). However, the ALJ determined that neither the paragraph "B" criteria nor the paragraph "C" criteria of the Listing were met before May 11, 2011. (R. 24). It is these findings to which Plaintiff objects, and which the court must review.

To meet the paragraph "B" criteria of Listing 12.04, a claimant must demonstrate that her affective disorder results "in at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration."

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.04(B).

>The ALJ correctly stated the paragraph "C" criteria of Listing 12.04:
>
>To satisfy the "C" criteria of listing section 12.04, the record must contain a medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:  1) repeated episodes of decompensation, each of extended duration; 2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

(R. 24); see also 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.04(C).

**B.     Analysis**

Plaintiff's argument that the same record evidence that demonstrates that Ms. Meyer-Lackamp's condition meets Listing 12.04 beginning May 11, 2011 also demonstrates that her condition met Listing 12.04 between June 30, 2006 and May 10, 2011, is not supported by the record or by the ALJ's decision in this case.  In finding that Ms. Meyer-Lackamp did not meet a Listing before May 11, 2011 and in assessing her RFC for that period, the ALJ specifically relied upon the medical evidence and treatment records relating to that period of time.  (R. 25- 26) (citing Exs. 1F, 2F, 4F).  However, In finding that her condition met Listing 12.04 beginning May 11, 2011, the ALJ specifically noted that Plaintiff requested assistance from the Division of Family Services on May 11, 2011, and he relied upon medical and treatment records relating to the period after May 11, 2011.  (R. 27-29) (citing Exs 6F, 9F, 10F, 11F, 12F, 14F, 15F) (particularly

note the "Applicant's Signature" on a physical exam dated "5-11-11." (R. 486)).  Clearly, the same evidence does not relate to both periods of time at issue here.

Plaintiff appeals to the medical evidence from before May 11, 2011, and asserts that it supports a finding that Ms. Meyer-Lackamp's condition met Listing 12.04 before May 11, 2011.  However, the ALJ explained how that evidence does not show that the Listing was met, and Plaintiff does not demonstrate any error in the ALJ's determination and does not demonstrate that the evidence <u>cannot</u> support the ALJ's determination.  In circumstances such as this, Plaintiff's argument that the evidence supports a different finding than the ALJ reached constitutes nothing more than an invitation to the court to reweigh the evidence and reach a conclusion contrary to that of the ALJ.  As noted above, the court may not do so.  It may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  <u>Bowman</u>, 511 F.3d at 1272; <u>accord</u>, <u>Hackett</u>, 395 F.3d at 1172.  Substantial record evidence supports the ALJ's determination.  The mere fact that there is also evidence which might support a contrary finding will not establish error in that determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  <u>Lax</u>, 489 F.3d at 1084 (citations, quotations, and bracket omitted); <u>see also</u>, <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966).

For the time period before May 11, 2011, the ALJ found that Ms Meyer-Lackamp had marked difficulties in maintaining social functioning, but he also found that she had only moderate restrictions in activities of daily living, moderate difficulties in maintaining concentration, persistence, and pace, and only one or two episodes of decompensation. (R. 23). However, he found that the evidence relating to the period beginning May 11, 2011 showed that Ms. Meyer-Lackamp had marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence or pace. (R. 28). Plaintiff has shown no error in these findings, and thereby has failed to meet her burden to demonstrate that Ms. Meyer-Lackamp's condition met the paragraph "B" criteria of the Listing before May 11, 2011.

In her alternative argument, Plaintiff asserts that even if the paragraph "B" criteria are not met, Ms. Meyer-Lackamp's condition meets the paragraph "(C)(2)" criteria of the Listing because even a minimal increase in mental demands or change in the environment would cause her to decompensate. (Pl. Br. 22-24). Plaintiff argues this is demonstrated by the record of frequent hospitalizations due to suicidal ideation and by a generalized inability to manage extreme anxiety due to life stressors. (Pl. Br. 24). She acknowledges that the ALJ found that the evidence before May 11, 2011 does not establish the presence of the paragraph "C" criteria, but she does not show the error in the ALJ's determination, and she does not meet her burden to show that the paragraph "C" criteria <u>are</u> met.

Contrary to Plaintiff's assertion, the record does not establish that even a <u>minimal</u> increase in mental demands or change in environment would cause her to decompensate

10

before May 11, 2011. "Episodes of decompensation" is defined as "temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). The ALJ acknowledged that Ms. Meyer-Lackamp had one or two episodes of decompensation before May 11, 2011, but that fact cannot satisfy the paragraph "C" criteria, or the paragraph "C" criteria would swallow the paragraph "B" criteria--resulting in no place for use of the "B" criteria. As noted above, the Listings should not be read expansively. Moreover, while the ALJ determined that Plaintiff had marked difficulties in maintaining social functioning before May 11, 2011, he also found that she had only moderate restrictions in activities of daily living, and moderate difficulties in maintaining concentration, persistence, and pace. Plaintiff has not shown error in these findings, and more importantly, other than one or two episodes of decompensation she has not shown that even a minimal increase in mental demands or change in environment would cause a loss of adaptive functioning producing greater difficulties in performing daily activities or in maintaining concentration, persistence, or pace before May 11, 2011. Plaintiff has not met her burden to show that the paragraph "C" criteria were met before May 11, 2011.

### III.   Vocational Expert Testimony

Plaintiff claims the ALJ erred in finding that Ms. Meyer-Lackamp was able to perform work in the economy before May 11, 2011 without first securing testimony from

a VE. (Pl. Br. 24-26). Plaintiff points out that if it is determined at step four that a claimant cannot perform past relevant work, it is the Commissioner's burden at step five to prove that there is work in significant numbers in the economy which is within the RFC of the claimant. Id. at 24-25. She argues that the presence of work available in significant numbers may be established only by providing an RFC which precisely matches a rule in the Medical-Vocational Guidelines (a grid rule), or by obtaining VE testimony regarding the availability of work in the economy for an individual with the RFC assessed. Id. at 25. She argues that because Ms. Meyer-Lackamp's RFC contained only nonexertional limitations, it does not precisely match a grid rule, and it became necessary for the ALJ to utilize the services of a VE. Thus, because the ALJ did not use a VE, she argues that this case must be remanded to determine if before May 11, 2011 there was work available in significant numbers which Ms. Meyer-Lackamp could perform. Id. at 25-26.

The Commissioner responds that the ALJ used the grids as a framework for deciding that work was available to Ms. Meyer-Lackamp before May 11, 2011. (Comm'r Br. 8-10). She argues that the ALJ properly determined that Ms. Meyer-Lackamp's non-exertional "limitations had little or no effect on the occupational base of unskilled work at all exertional levels." (Comm'r Br. 8). Relying on the fact that the ALJ gave "great weight" to Dr. Cottone's medical opinion as it related to the period before May 11, 2011, the Commissioner argues that the opinion constitutes substantial evidence supporting the

determination that Ms. Meyer-Lackamp could perform work at all exertional levels and that jobs existed that she could perform.  Id. at 9-10.

### A.     Step Five - Use of the Medical-Vocational Guidelines (Grids)

In the grids, the Commissioner has provided a tool to aid in making uniform, efficient decisions in determining the types and numbers of jobs existing in the national economy for certain classes of claimants.  Heckler v. Campbell, 461 U.S. 458, 468 (1983).  However, the grids are applicable "only when they describe a claimant's abilities and limitations accurately."  Id. 461 U.S. at 462 n.5; see also Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).  Because the grids are based upon the physical exertion requirements for work in the national economy, they may not be fully applicable for claimants who have nonexertional limitations.  Channel, 747 F.2d at 580. Realizing this limitation on the use of the grids, the Commissioner has promulgated a procedure for evaluating claims where solely nonexertional impairments are present:

> In the evaluation of disability where the individual has solely a nonexertional type of impairment, determinations as to whether disability exists shall be based on the principles in the appropriate sections of the regulations, giving consideration to the rules for specific case situations in this appendix 2.  The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments.

20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(e)(1).

The grids direct a finding in a particular case only when there is an "exact fit" between the criteria of the grid and the situation before the ALJ.  Campbell, 461 U.S. at 468; Channel, 747 F.2d at 579.  Where the grid rules do not direct a finding, "full

consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations which will provide insight into the adjudicative weight to be accorded each factor." 20 C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(e)(2); see also Channel, 747 F.2d at 579-82 (application of the grids where nonexertional limitations are present).

Where plaintiff is unable to do a full range of work in an exertional category, the ALJ may not conclusively apply the grids. Channel, 747 F.2d at 582 (error to apply the grids absent a finding that plaintiff could perform the full range of sedentary work). Instead, he "must give 'full consideration' to 'all the relevant facts,' App. 2, § 200.00(e)(2), including expert vocational testimony if necessary, in determining whether [plaintiff] is or is not disabled." Channel, 747 F.2d at 583. Where nonexertional limitations affect the range of work of which plaintiff is capable, the grids may serve only as a framework to assist in determining whether sufficient jobs exist in the national economy given plaintiff's limitations and characteristics. Gossett, 862 F.2d at 806.

But, "the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids. Use of the grids is foreclosed only '[t]o the extent that nonexertional impairments further limit the range of jobs available to the [plaintiff].'" Channel, 747 F.2d at 583, n.6 (quoting Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983)). Thus, use of a vocational expert is required only where plaintiff's nonexertional impairments cause a limitation on the range of work available in a particular occupational base and where no other evidence (either in the record or in occupational resources upon

which the Commissioner may rely, see 20 C.F.R. §§ 404.1566(d), 416.966(d)) establishes that a significant number of jobs of which plaintiff is capable are available. Where the grids establish that a significant number of jobs exist in the economy, the Commissioner need not introduce evidence of specific available jobs. Campbell, 461 U.S. at 468-70.

### B.     The ALJ's Findings

The ALJ determined that before May 11, 2011 Ms. Meyer-Lackamp "had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant would be capable of simple, repetitive work that does not require frequent interactions with other people." (R. 24) (finding no. 5). In reaching that determination, the ALJ accorded "great weight" to the opinion of Dr. Cottone with regard to Ms. Meyer-Lackamp's limitations and abilities during the time period before May 11, 2011. (R. 26); see also (R. 23) ("With regard to the period prior to May 11, 2011, the undersigned concurs with the opinion of . . . Robert Cottone, Ph.D."). For the period before May 11, 2011, the ALJ adopted Dr. Cottone's opinion that Ms. Meyer-Lackamp had moderate restrictions in activities of daily living, marked difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and one or two episodes of decompensation. (R. 23). The ALJ also adopted Dr. Cottone's RFC opinion, that Ms. Meyer-Lackamp is limited to simple, repetitive work that does not require frequent interactions with other people. (R. 26) (citing Ex. 8F/3 (R. 505)) ("The claimant is best suited for simple,

repetitive work that does not require frequent interactions with others."). The ALJ explained his rationale:

> The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. Unskilled, entry-level work with a *Specific Vocation Preparation* (SVP) rating of 2 or less requires little or no judgment to do simple duties that can be learned on the job in a short period of time (20 CFR 404.1568 and 416.968). The undersigned finds the claimant has not suffered a substantial loss of an ability to meet the activities generally required by competitive, unskilled work. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

(R. 26).

### C. Analysis

As Plaintiff points out, the ALJ in this case found that the mental limitations assessed for Ms. Meyer-Lackamp have little or no effect on the occupational base for unskilled work at all exertional levels and that, therefore there are a significant number of jobs in the economy which are within the RFC assessed. Plaintiff argues that such a finding cannot be made without the testimony of a VE, and that the case must be remanded to secure such testimony. Plaintiff's argument ignores the Tenth Circuit's rule as stated in Channel, that an ALJ "must give 'full consideration' to 'all the relevant facts,' App. 2, § 200.00(e)(2), including expert vocational testimony if necessary, in determining whether [plaintiff] is or is not disabled." Channel, 747 F.2d at 583 (emphases added). Plaintiff forgets that use of a vocational expert is required only where the claimant's nonexertional impairments cause a limitation on the range of work available in a

particular occupational base <u>and where no other evidence</u> (either in the record or in occupational resources upon which the Commissioner may rely, <u>see</u> 20 C.F.R. §§ 404.1566(d), 416.966(d)) establishes that a significant number of jobs of which plaintiff is capable are available.  Where proper use of the grids establishes that a significant number of jobs exist in the economy, the Commissioner need not introduce evidence of specific available jobs.  <u>Campbell</u>, 461 U.S. at 468-70.

The real question before the court is whether the ALJ correctly determined that the mental limitations to simple, repetitive work that does not require frequent interaction with other people has little or no effect on the occupational base for unskilled work at all exertional levels.  If so, then it was proper to find that there are a significant number of jobs in the economy of which Ms. Meyer-Lackamp was capable.  If not, remand is necessary to secure sufficient vocational resources to determine whether there were a significant number of jobs in the economy of which Ms. Meyer-Lackamp was capable.  The court finds that the ALJ did not err.

Social Security Ruling (SSR) 85-15 deals with the grid rules as a framework for evaluating solely nonexertional impairments.  1983 WL 56857.  As that ruling suggests, in a case such as this "[w]here a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work."  <u>Id.</u> at *4.  The ruling also explains that the basic mental requirements of competitive, remunerative, unskilled

17

work "include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." 1983 WL 56857 at *4. The ruling goes on to note that "[a] <u>substantial</u> loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. . . . [and] would justify a finding of disability." Id. (emphasis added).

As noted above, the ALJ adopted Dr. Cottone's RFC assessment. (R. 26) ("The residual functional capacity assessed by the State agency medical consultant is reasonable and consistent with the objective medical evidence and the claimant's course of treatment, or lack thereof."). Dr. Cottone concluded his RFC by stating, "The claimant is best suited for simple, repetitive work that does not require frequent interaction with others." (R. 505). However, the individual RFC findings from which he reached that conclusion are very instructive to the issue here. He opined that Ms. Meyer-Lackamp "retains the ability to understand and remember simple instruction," "can carry out simple work instruction," "can maintain adequate attendance and sustain an ordinary routine without special supervision," "can interact adequately with peers and supervisors," and "can adapt to most usual changes common to a competitive work setting." (R. 505). When comparing Dr. Cottone's specific RFC findings with the basic mental demands of competitive, remunerative, unskilled work, it becomes readily apparent that Ms. Meyer-Lackamp's RFC does not reflect a substantial loss of ability to meet those demands, and that there is

substantial record evidence supporting the ALJ's finding that her mental limitations have little or no effect on the occupational base of unskilled work at all exertional levels.

Plaintiff has shown no error in the final decision of the Commissioner.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 29th day of May 2015, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**